*E-Filed 7/1/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CYNTHIA JOHNSON and JAMONT JOHNSON, as individuals,<br><br>  Plaintiffs,<br><br>  v.<br><br>COUNTY OF ALAMEDA, a public entity, ALAMEDA COUNTY SHERIFF'S OFFICE, a department of the County of Alameda, ALAMEDA COUNTY SHERIFF'S OFFICE DETENTION AND CORRECTION DIVISION, a department of the County of Alameda, DEPUTY SHERIFF KEITH W. GILKERSON, an individual, and DOES 1-50, INCLUSIVE,<br><br>  Defendants.<br>_____/ | No. C 10-01437 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Cynthia Johnson challenges the constitutionality of her custodial arrest for reckless driving and attempting to elude a police officer's motor vehicle with disregard for the safety of persons or property. Alameda County Deputy Sheriff Keith Gilkerson initiated a traffic stop after Johnson crossed a double yellow line in order to drive around a double parked vehicle. According to Johnson, she initially drove for approximately 0.3 mile before she noticed Gilkerson and then thought that he intended to pass her vehicle. She slowed and pulled to the curb, but after he pulled

in behind her she drove a couple more blocks, making two right turns, in order to stop in front of her mother's house. Johnson was arrested and booked into Santa Rita Jail where she spent approximately eighteen hours before being released on bail. Ultimately, Johnson pleaded no contest to crossing a double line and all other charges were dismissed.

Based on these events, Johnson's first amended complaint (FAC) asserts ten claims: (1) false arrest per 42 U.S.C. § 1983; (2) excessive force per 42 § U.S.C. 1983; (3) illegal search and seizure per § U.S.C. 1983; (4) violation of the Bane Act, California Civil Code § 52.1; (5) state law false arrest/false imprisonment; (6) assault; (7) battery; (8) intentional infliction of emotional distress (IIED); (9) negligence; and (10) negligent infliction of emotional distress (NIED). Co-plaintiff Jamont Johnson,[1] Johnson's husband, brings an additional claim for loss of consortium. Defendants County of Alameda, Alameda County Sheriff's Office, Alameda County Detention and Correction Division, and Gilkerson now move for summary judgment on the grounds that Gilkerson had probable cause for the arrest. In addition to opposing defendants' motion, Johnson moves for leave to amend her complaint to add a claim for violation of the equal protection clause. Based on the parties' submission and oral argument, and for the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part and plaintiffs' motion for leave to file an amended complaint is granted.

## II. BACKGROUND

With respect to many facts regarding Johnson's arrest, the accounts of Gilkerson and Johnson cannot be reconciled.[2] Nonetheless, defendants move for summary judgment based solely on a subset of the facts consistent with Johnson's version of events as follows. On August 13, 2009, Johnson was driving her vehicle eastbound on Villareal Drive in Castro Valley. FAC, ¶¶ 13-14. She was traveling to her mother's house to drop off her daughter before going to a job interview.

---

[1] Although Cynthia and Jamont Johnson are co-plaintiffs, all claims but one arise from Cynthia's alleged injuries. Accordingly, the Order refers to "Johnson," meaning Cynthia, for convenience.

[2] The parties differ in their accounts of Johnson's driving. She claims she came to a complete stop before driving around the double parked car and at the stop sign on Villareal, drove the speed limit, and drove slowly from the point at which she knew Gilkerson was initiating a stop to her mother's house. FAC, ¶¶ 15, 17, 20-21. In Gilkerson's version, Johnson sped around the double parked car, continued to speed, and did not come to a complete stop at the stop sign on Villareal. Declaration of Probable Cause in Support of Arrest, Exh. E to Kazi Decl. in Support of Plaintiffs' Opposition to MSJ.

Johnson Depo. Vol. I, 27:15-20, Exh. B to Kazi Decl. in Support of Plaintiffs' Opposition to MSJ (Exh. B).  She came to a block with a park on one side, a baseball field on the other, and a one lane road in each direction divided by double yellow lines.  A stopped vehicle with its hazard lights on blocked the direction in which Johnson was travelling.  FAC, ¶ 15.  After coming to a complete stop, she passed the vehicle on the left, crossing the yellow lines in the process.  FAC, ¶¶ 15-16.  Deputy Sheriff Gilkerson, a uniformed motorcycle officer, was on his motorcycle near the park entrance and saw Johnson cross the yellow lines.

Gilkerson pulled behind Johnson and, at some point, activated the red light and siren on his motorcycle.  According to Johnson, she initially did not notice Gilkerson behind her.  Exh. B, 72:24-73:19.  She drove for approximately 0.3 mile on Villareal before reaching a stop sign at the intersection with Greenville Place.  FAC, ¶ 17.  While at the stop sign, Johnson admitted seeing the lights and hearing the siren.  FAC, ¶ 18.  She turned left at the intersection and passed parked cars on the side of Greenville before slowing down and pulling over to the side, without stopping, mid-way through the block.  FAC, ¶¶ 18-19.  She believed that Gilkerson just wanted to pass.  When he pulled in behind her car, Johnson realized he intended to stop her.  Johnson, however, pulled away from the curb and kept driving to the end of Greenville, where she turned right.  She drove to the end of that block and turned right again on Summerglen Place and then stopped in front of her mother's house.  FAC, ¶ 21; Exh. B. 94:17-22.

Johnson exited her car and started walking toward the back of the vehicle.  Exh. B., 96:22-97:3; 102:17-103:10.  Intending to explain why she stopped there, she told Gilkerson that they were at her mother's house.  FAC, ¶ 22.  He responded that she was under arrest for reckless driving and evasion.  FAC, ¶ 22.  Johnson offered the further explanation that she thought Gilkerson wanted to pass her and that once she realized he intended to pull her over, she drove to a safer location to stop.  Exh. B, 102:17-103:14.  Gilkerson pushed her shoulder to turn her around, grabbed her hands, and cuffed them behind her back.  Exh. B., 105:13-18; 107:1-4.  After Johnson complained that the cuffs were too tight another officer eventually loosened them before she was placed in a patrol car.  FAC, ¶ 32.  Although Johnson's mother offered to take possession of the car, Gilkerson had it impounded for thirty days.  FAC, ¶ 34.  According to Johnson, she was not informed that she had the right to

request a tow hearing, even though she contacted the sheriff's office to inquire about getting her car back. Johnson Depo., Vol. II, 233:3-22, Exh. C. to Kazi Decl. in Support of Plaintiffs' Opposition to MSJ.

Gilkerson cited Johnson for reckless driving and for evading arrest accompanied by "willful or wanton disregard for the safety of persons or property." Cal. Veh. Code §§ 23103(a), 2800.2(a). Johnson was taken to Santa Rita Jail at approximately 10 a.m. and went through the normal booking process, which was not completed until almost 9:00 p.m. Johnson eventually posted bail and was released at 3:45 a.m. She appeared at her arraignment the following morning where she was charged with reckless driving and misdemeanor evasion. Johnson ultimately pleaded no contest to crossing a double yellow line and paid a $500 fine.

### III.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must identify factual disputes that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Irrelevant or unnecessary factual disputes do not raise any genuine issue for trial. *Id.* To preclude entry of summary judgment, the nonmoving party must present sufficient evidence such that a jury could return a verdict in his or her favor. *Id.*

### IV.  DISCUSSION

A.  Fourth Amendment

Johnson brings three claims for violation of her Fourth Amendment rights: false arrest, excessive force, and illegal search and seizure of her vehicle. Defendants move for summary judgment on the grounds that Gilkerson had probable cause as a matter of law to arrest Johnson for

flight from a police officer, also referred to as evading arrest or evasion. *See* Cal. Veh. Code § 2800.1. A warrantless arrest for a misdemeanor traffic offense committed in an officer's presence does not constitute a Fourth Amendment violation so long as it is supported by probable cause. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that officer was authorized to make custodial arrest for seat belt violation "without balancing costs and benefits or determining whether or not [plaintiff's] arrest was in some sense necessary"); *Maryland v. Pringle*, 540 U.S. 366, 370 (U.S. 2003). Probable cause exists where, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability" that a crime was committed. *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). Generally, an officer does not need to have probable cause for every element of the offense. *See United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983). When specific intent is such an element, the officer must have probable cause to believe it is present in order to sustain a reasonable belief that a crime has occurred. *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. Cal. 2007) (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)).

As a threshold matter, Gilkerson had probable cause to initiate the traffic stop after he witnessed Johnson commit a traffic infraction by crossing over the double yellow lines. *See* Cal. Veh. Code § 21460(a) ("When double parallel solid lines are in place, no person driving a vehicle shall drive to the left thereof, except as permitted in this section."). Johnson does not concede the issue of probable cause for the traffic stop. Instead, she argues that she came to a complete stop behind a car that was blocking her lane and drove around it when it was safe to do so. She therefore asserts that, at most, she committed only a "highly technical violation."[3] Even if the violation arguably could be "excused," as Johnson contends in her Opposition, the commission of even a minor traffic infraction renders a vehicle stop reasonable under the Fourth Amendment. *See*, *e.g.*, *Whren v. United States*, 517 U.S. 806, 819 (U.S. 1996). Thus, no Fourth Amendment claim arises from Gilkerson's initial decision to stop Johnson's car.

---

[3] Johnson cites to provisions of California Vehicle Code sections 21460(b)-(d) detailing exceptions to the prohibition against crossing parallel solid line. None of the exceptions applies to her circumstance. She further raises California Vehicle Code section 21751, which is applicable to passing on a two lane highway, but is not incorporated by section 21460.

The more vexing issue is whether Gilkerson had probable cause to arrest Johnson for evading arrest.  California Vehicle Code section 2800.1 makes it a misdemeanor punishable by imprisonment of not more than one year for "[a]ny person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle."  The following four conditions must exist: (1) the officer's motor vehicle exhibits at least one lighted red lamp visible from the front and the person sees or reasonably should have seen the red lamp; (2) the vehicle is sounding a siren as reasonably necessary; (3) the vehicle is distinctively marked; and (4) the vehicle is operated by an officer wearing a distinctive uniform.  *Id.*  Despite the fact that Gilkerson cited Johnson for reckless driving and violation of California Vehicle Code section 2800.2, which incorporates section 2800.1 and further requires willful or wanton disregard for the safety of persons or property, defendants need not demonstrate that probable cause existed to arrest Johnson for those offenses.  "Probable cause need only exist as to any offense that could be charged under the circumstances." *Blankenhorn v. City of Orange*, 485 F.3d 463, 473 (9th Cir. 2007).

Based on the undisputed facts, defendants have established the four conditions related to Gilkerson's appearance as a peace officer making a traffic stop.  When she was stopped at the intersection of Villareal and Greenville, Johnson admits that Gilkerson pulled behind her, flashed his lights, and sounded his siren.  She does not dispute defendants' statement that the light was red as required, or that Gilkerson was dressed in his uniform and riding a marked police motorcycle. What defendants do not adequately address, however, is the element of the offense that transforms a failure immediately to comply with a traffic stop into a willful attempt to flee from a pursuing officer.  Specifically, a violation of section 2800.1 requires that a driver act "with the intent to evade."  At the motion for summary judgment stage, the only facts on which defendants rely are that Johnson pulled to the curb on Greenville Place, pulled back out into the road after Gilkerson pulled behind her, then continued driving slowly with Gilkerson following as she made two turns before stopping on Summerglen Place.  Johnson immediately exited her car, walked toward Gilkerson, and stated that they were stopped at her mother's house.  She also attempted to explain that she initially thought he wanted to pass her, but when she realized he wanted her to stop she wanted to drive to a

safer location. According to defendants, under these circumstances, Gilkerson reasonably could have believed Johnson intended to evade him. Their contention, however, is insufficient to obtain judgment as a matter of law. Based on the manner in which Johnson states she drove, the distance she drove after she first started to pull over, and the explanation she offered to Gilkerson, this is not a case where no reasonable jury could find absence of probable cause. Accordingly, defendants' motion for summary judgment must be denied.

B.  Qualified Immunity

In the alternative, defendants contend that Gilkerson is entitled to qualified immunity for the Fourth Amendment claims. Qualified immunity serves to shield a defendant from litigation and trial "only if the facts alleged and evidence submitted, resolved in [the plaintiff's] favor and viewed in the light most favorable to [her], show that [the defendant's] conduct did not violate a federal right; or, if it did, the scope of that right was not clearly established at the time." *Blankenhorn*, 485 F.3d at 471 (citation omitted). Thus, the first question is whether Gilkerson violated Johnson's Fourth Amendment rights. If no violation is found, then he is entitled to qualified immunity. If there was a violation, or if a triable question of fact remains, then the second question is whether the constitutional violation was clearly established.

In their motion, defendants proceed directly to the second inquiry and argue that even if Gilkerson violated Johnson's constitutional rights, he is entitled to qualified immunity because "a reasonable officer in his position could have believed" that her arrest and the amount of force he used were lawful. In support, they argue that Johnson has no clearly established right to be free from arrest where she crossed a double yellow line and "reasonably appeared to be evading the stop." Offering that Johnson "reasonably appeared" to be evading arrest, however, merely reargues the existence of probable cause. If Johnson reasonably appeared to be evading arrest, there would be no constitutional violation. Defendants fail to point out any ambiguity in the scope of Johnson's right to be free from unreasonable seizure under the circumstances established by the few uncontested facts on which they rely. In other words, they do not explain why Gilkerson could reasonably believe probable cause existed, even if it did not. Therefore, defendants' motion for summary judgment that Gilkerson is entitled to qualified immunity is denied.

C. *Monell* Claims

Johnson also seeks to hold the County of Alameda and the Sheriff's Office liable for the alleged Fourth Amendment violations under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Pursuant to the FAC, she contends that defendants were acting in accordance with a custom, policy, and practice of the County and the Sheriff's Office in violating her constitutional rights. In particular, she alleges that the County and the Sheriff's Office have "failed adequately to train" the sheriffs on their Fourth Amendment obligations when arresting suspects and conducing searches and seizures. Defendants argue that Johnson has not offered any evidence of training that was so inadequate as to demonstrate a deliberate indifference to likely constitutional violations. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 390 (1989). They therefore move for summary judgment on the issue of municipal liability.

In response, Johnson argues that the Court should defer ruling on the *Monell* claims to allow further discovery pursuant to Federal Rule of Civil Procedure 56(d). Under that Rule, a court may defer ruling on a motion for summary judgment where the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Johnson's Opposition cites to paragraph 14 of the Kazi Declaration where plaintiffs' counsel states that she anticipates "information relevant to plaintiffs' equal protection claims will be produced" in response to outstanding discovery requests. In other words, Johnson offers no declaration stating that it anticipates developing facts essential to opposing defendants' motion for summary judgment regarding the Fourth Amendment claims. Accordingly, deferring judgment is not warranted and defendants' motion for summary judgment on the Fourth Amendment *Monell* claims is granted.

D. State Law Claims

Johnson also asserts a number of claims based on violations of state law including: the Bane Act, false arrest/false imprisonment, assault, battery, IIED, negligence, and NIED. With respect to each of these claims, defendants move for summary judgment on the grounds that Johnson's arrest was lawful. Moreover, defendants argue that Jamont Johnson's loss of consortium claim cannot be maintained because Johnson herself does not possess a viable state law claim. As defendants have

not established that Gilkerson had probable cause as a matter of law, their motion for summary judgment on these claims is denied.

E.      Plaintiffs' Motion for Leave to Amend

On May 13, 2011, plaintiffs filed a motion for leave to add a claim stating an equal protection clause violation. The deadline for hearing non-dispositive pretrial motions passed on April 14, 2011. Defendants oppose the motion to amend and insist that Johnson is obligated to show good cause for departing from the scheduling Order. *See* Fed. R. Civ. P. 16(b) (providing that the scheduling order "shall not be modified except upon a showing of good cause"). In other words, leave to amend is not granted at this point with the same liberality that applies to motions for leave to amend under Rule 15(a). *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). Instead, the court must consider whether a plaintiff seeking leave to amend has acted with sufficient diligence. *Id.* (upholding denial of leave to name a new defendant where plaintiffs "[failed] to heed clear and repeated signals that not all the necessary parties had been named in the complaint"). Johnson does not dispute that Rule 16(b) applies, but requests that the Court consider her motion for leave to amend also as a motion to revise the scheduling Order.

Johnson, who is African-American, originally included a race-based equal protection claim in her complaint. Defendants argue that they informed her of their contention that the claim was deficient and requested that she eliminate it to avoid a motion to dismiss. On May 14, 2010, Johnson voluntarily filed the FAC that dropped the claim. Johnson, however, contends that she has recently learned of additional facts that now supports reasserting it. Jamont Johnson, Cynthia's husband, declares that sometime in October 2010 he was followed for no apparent reason by an Alameda County deputy sheriff for approximately 1.8 miles while he drove in Castro Valley. In March 2011, Johnson learned from her bail agent, Sparkle Kelley, that she believes racial profiling is prevalent in Castro Valley. According to Johnson, Kelley informed her that she has had other African-American clients who were arrested and placed in jail for minor traffic violations. Johnson explains that Kelley recently lost her files due to a flood and could not provide further information, but recalled at least two clients stopped in Castro Valley, a professor and a school principal. Finally, Johnson contends that on April 27, 2011, she read an article about a suit filed by Kwixuan

Maloof, also African-American, against the County of Alameda for claims arising out of a traffic stop by deputy sheriffs in Castro Valley.

Defendants argue that the basic theory of Johnson's equal protection claim was known to her for a long time and therefore she has not acted diligently in seeking to amend. In particular, Johnson contends that Gilkerson's treatment of her gives rise to an inference that African American drivers are singled out for mistreatment. Jamont Johnson states that he was suspiciously followed, but that event also occurred several months ago. Johnson counters that, prior to learning more recently of information from Kelly and of the incident involving Maloof, she lacked information connecting Gilkerson's conduct to the County's practices. Although Johnson voluntarily dismissed an earlier equal protection claim, she provides a good faith explanation for seeking to amend at this point. Accordingly, her motion to amend is not barred by lack of diligence.

Defendants also oppose leave to amend on the grounds that they would suffer undue prejudice. Prejudice to the opposing party may be considered when determining whether to allow modification of the scheduling order; it also carries the greatest weight in the court's Rule 15(a) analysis. *See Johnson*, 975 F.2d at 609; *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In this case, defendants complain that amendment would delay this proceeding, involve reopening discovery, and potentially involve additional motion practice. Having to engage in activities now, rather than at an earlier time in the case, in and of itself, does not constitute prejudice to defendants. In other words, they have not identified any detriment to the merits of their case. Although they suggest such prejudice would occur if the Court delayed in ruling on their present motion for summary judgment—by permitting plaintiffs to "preview" their legal position—no such deferral is involved. Under Federal Rule of Civil Procedure 15(a), the court should freely grant leave to amend "when justice so requires." Accordingly, plaintiffs' motion for leave to file an amended complaint is granted.

## V.  CONCLUSION

Defendants' motion for summary judgment on the Fourth Amendment claims is denied as to Gilkerson, denied on the issue of qualified immunity, and granted with respect to municipal liability.

1  The motion for summary judgment on all state law claims is denied.  Plaintiffs' motion for leave to
2  file an amended complaint to add a claim for violation of the equal protection clause is granted.
3       Based on the foregoing, the Pretrial Conference on August 4, 2011 and the trial presently
4  scheduled to begin on August 15, 2011 are vacated.  The parties shall instead appear at a Case
5  Management Conference on **August 4, 2011 at 10:00 a.m.**  Parties or counsel may appear
6  personally or file a request to appear by telephone.  If any party files such a request, all parties shall
7  appear telephonically and must contact Court Conference at 866/582-6878 at least one week prior to
8  the Conference.

10      IT IS SO ORDERED.

12 Dated: 7/1/11

          RICHARD SEEBORG
          UNITED STATES DISTRICT JUDGE